U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 17 2009
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| TROY L. BISHOP, PRO SE, <br> A.K.A. TROY LYNN BISHOP, <br> TDCJ-CID No. 688987, <br><br> Plaintiff, <br><br> v. <br><br> Dr. DAVID KARNEY, <br> Ms. SCOTT, and <br> MIKE ROWLAND, <br><br> Defendants. | § § § § § § § § § § § § § § | 2:06-CV-0167 |

**MEMORANDUM OPINION,**
**ORDER GRANTING DEFENDANT KARNEY'S MOTION**
**FOR SUMMARY JUDGMENT, AND ORDER OF DISMISSAL**

Before the Court is Defendant Karney's April 30, 2009 motion for summary judgment or alternatively motion for partial summary judgment, with supporting brief and exhibits. Plaintiff filed his response and supporting documents on June 16, 2009, and defendant KARNEY filed a reply on June 29, 2009.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, filed the instant cause while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, pursuant to Title 42, United

States Code, section 1983, complaining against defendants KARNEY, SCOTT, and a Mr. ROLLINGS. Subsequently, MIKE ROWLAND was substituted for Mr. ROLLINGS.

By his August 10, 2006 Amended Complaint, plaintiff alleges, in relevant part[1], that, on February 3, 2005, he was he was discharged from or refused admission to the Step Down program, a program for aggressive inmates who are a frequent danger to themselves. Plaintiff claims defendant Dr. KARNEY took this action in retaliation for plaintiff having previously exercised his First Amendment right of access to the courts by filing a lawsuit against health care personnel while in the PAMIO program (the Program for the Aggressive Mentally Ill Offender). Plaintiff also claims defendant KARNEY had knowledge of a serious risk of harm to plaintiff, but showed no concern for plaintiff when he took this action and that he treated plaintiff differently than he did other similarly-situated prisoners.

Plaintiff requests an award of $10,000.00 compensatory damages from each defendant individually, an award of $10,000.00 punitive damages from each defendant individually, costs, and attorney's fees.

## FACTS OF THE CASE

Neither party submitted a set of undisputed facts in any pleading; nevertheless, the parties' pleadings reveal the following facts are not in dispute.

On July 16, 2002, plaintiff, appearing pro se and in forma pauperis, filed cause no. 2:02-CV-0202 while a prisoner in the custody of the Texas Department of Criminal Justice,

---

[1] Plaintiff also alleges that on February 2, 2005, defendant SCOTT confiscated four of his self-help legal books because she had read plaintiff's legal material and discovered plaintiff had named her friends and co-workers in a lawsuit for which he was trying to file a timely appeal. Lastly, plaintiff alleges that, on February 4, 2005, defendant ROLLINGS "ordered chemical agents to be sprayed onto plaintiff and without any reasonable cause, and unprovoked . . . . because plaintiff had filed a previous lawsuit" and a recent step one grievance.

Correctional Institutions Division (TDCJ-CID) against multiple defendants, including but not limited to Dr. Orr and several nurses, both medical and psychiatric, at the Clements Unit. That cause was dismissed on January 11, 2005; appeal was signed February 1, 2005.

Plaintiff, appearing pro se and in forma pauperis, filed the instant suit while a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) and was incarcerated during the time relevant to this cause. At all times relevant to this cause, defendant KARNEY was a licensed psychiatrist operating as Interim Clinical Director for Step Down (Clements Unit Psychiatry Staff) and Northern Region Medical Director and was acting under color of state law. Plaintiff was admitted to the Step Down Program on February 1, 2005. On February 3, 2005, defendant KARNEY wrote a clinic note which stated as follows:

> Previous litigation and conflict between this patient and clinical and security staff make him unsuitable for the Step-Down Program, PAMIO and the Bill Clements Unit.
> 1. Discharge from Step Down BC-12-E,
> 2. Transfer to UOA as soon as possible,
> 3. Recommend do not return to the Clements Unit in any capacity for the foreseeable future.

Plaintiff was discharged from the Step Down Program and returned to the Wynne Unit. Plaintiff continued to require medical and mental health treatment for cutting himself to relieve stress.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). Consequently, after adequate time for discovery

and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party bears the burden of proof. *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Because the consequences of summary judgment are so severe, the court must be careful to avoid premature termination of legitimate lawsuits merely because of unskilled presentations. *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). In determining a movant's request for summary judgment, all reasonable inferences must be made in favor of the party opposing the motion. *Phillip's Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Only disputes of facts that could affect the outcome of the suit at trial will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Upon such a showing, the burden of production shifts to the nonmovant to delineate specific facts which demonstrate the presence of a genuine issue of material fact. *Id.*; *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir. 1992). A motion for judgment as a matter of law is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. If there is substantial evidence, that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then the motion for

judgment as a matter of law should be denied. *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly established constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Analysis at this stage is performed under the "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998). Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id.* (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

## THE LAW AND ANALYSIS

The elements of a retaliation claim are: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

To prove his claim of retaliation, plaintiff must first identify a specific constitutional right, the exercise of which triggered the claimed retaliatory act. Plaintiff identifies his lawsuit no. 2:02-CV-0202 against Dr. Orr, other medical and psychiatric caregivers, as well as security staff, as the constitutional right for which he suffered retaliation from defendant KARNEY. Plaintiff also argues he is "politically active and a jailhouse lawyer, and other prisoner's in step down were not." Thus, plaintiff is claiming he suffered retaliation because of his exercise of his First Amendment right of Access to Courts.

Access to the Courts, however, is not unlimited and only encompasses a prisoner's "reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] conviction(s) or [his] conditions of confinement." *Johnson v. Rodriguez*, 110 F.3d 299, 310-311 (5th Cir. 1997)(quoting *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996). To prevail, plaintiff must prove he engaged in "constitutionally protected litigation activity," was denied mental health care, and "that such action was taken 'in an effort to chill [his] access to courts or to punish [him] for having brought suit.'" *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)(quoting *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S.Ct. 312, 130 L.#d.2d 275 (1994). "[N]either any frivolous filings nor secondary litigation activity . . . may comprise the basis of a retaliation claim." *Id*. at 311.

Further, "[b]ecause it is the prisoner who bears the burden of proving a constitutional violation it is the prisoner who must demonstrate the protected character, including non-frivolity, of prior lawsuits in which he was involved." *Johnson v. Rodriguez* at 311 n.16.

Plaintiff has not presented any evidence that he is, indeed, politically active or defined what he means by "jailhouse lawyer." He has also failed to present any evidence defendant KARNEY knew plaintiff was "politically active" and a "jailhouse lawyer."

As to the lawsuit plaintiff has identified, cause no. 2:02-CV-0202 against Dr. Orr, other medical and psychiatric caregivers, as well as security staff, this lawsuit was dismissed January 11, 2005 <u>as frivolous</u> and for failure to state a claim. That dismissal was affirmed on appeal July 6, 2006. The right to file a frivolous lawsuit is not constitutionally protected and does not provide a basis to support plaintiff's claim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310-311 (5th Cir. 1997). Plaintiff has failed to adduce evidence to prove the first element of his retaliation claim, and defendant KARNEY is, therefore, entitled to judgment as a matter of law.

Moreover, although plaintiff was denied access to or removed from the Step Down program, this did not result in the denial of all mental health treatment. The medical records presented by plaintiff show when he continued to self-mutilate at the Wynne Unit, he was transferred to Skyview in May, June, and July for additional psychiatric treatment [plaintiff's Exhibit J at 62-80]. After his treatment at Wynne and Skyview, plaintiff was transferred to the McConnell Unit and then to the Ramsey II Unit, where he received one-on-one psychiatric care with a psychiatrist who has administered thorazine and cogentin.[2]

---

[2] April 9, 2009 hearing at 3:01:27 to 3:01:56.

Plaintiff has also failed to prove the second and fourth elements of his retaliation claim, intent and causation. By his Affidavit, defendant KARNEY states Step Down is a program for providing out-patient mental health care to aggressive mentally ill offenders who meet program criteria. [Defendant's Aff. at p. 3]. Defendant presents a copy of the TDCJ Health Services Division Policy Manual Number: A-078.9, entitled "Referral to the Personality Disorder/Aggressive Behavior Unit." This policy contains a Program Description for Step Down which states that "the pod designated for this program is an Administrative Segregation (Ad Seg) housing assignment managed by the Bureau of Classification (BOC), and only BOC may place an offender into or remove an offender from that housing pod. Ad Seg rules apply and the offender's voluntary consent is not required." [Defendant's App. at 14, Plaintiff's Exhibit A at 16].

Plaintiff contends defendant KARNEY discharged him from the program, but defendant points out Policy A-08.9 only reveals provisions for recommendation of reassignment, not discharge[3]. He contends he merely implemented TDCJ policy in authorizing the initiation of plaintiff's transfer out of Step Down. It is clear that KARNEY's Progress Note in plaintiff's Outpatient Clinical Record provided the basis for plaintiff's transfer. Neither plaintiff nor defendant has offered evidence of whether plaintiff could or would have been transferred without the Clinic Note. Defendant KARNEY, himself, states, in his Affidavit, that the progress note "document[ed] that the required coordination between TDCJ Security Staff and TTUHSC Clinical Staff had been accomplished" and "cleared the way for Clements Unit Security/Classification to submit a request to the State Classification Committee to have the

---

[3]In light of the out-patient nature of the treatment provided, there would be no need for provisions for discharge.

8

plaintiff returned to his home unit." [Defendant's Aff. at p. 6]. Whether KARNEY "discharged" plaintiff or provided the necessary medical authorization to allow Unit Classification to arrange his transfer does not appear to be a material fact precluding summary judgment. Plaintiff was removed from 12 Building and the Step Down program initially on KARNEY's authorization.

Defendant KARNEY presents his Affidavit statement that, acting in his capacity as Interim Clinical Director for the Step Down Program, Crisis Management, and PAMIO at the Clements Unit and as the Northern Region Medical Director, CMHS, he was informed on February 3, 2005 by Clements Unit staff that plaintiff had been admitted to the Step Down Program and had earlier filed suit against Dr. Orr and other psychiatric and medical caregivers and security staff still working in 12 Building and on the Step Down Program, which suit was on appeal. [Defendant's Aff. at p. 5].

Defendant avers Dr. Orr was still a psychiatrist at the unit and provided the majority of the psychiatric care in Crisis Management at the Clements Unit. He also provided much of the care for Step Down participants and was on call for Step Down, PAMIO and Crisis Management. [Defendant's Aff. at p. 4]. Defendant KARNEY states Dr. Orr would have been assigned to care for plaintiff on a regular basis, to be on call to care for him after hours if there were an emergency, and to treat him in Crisis Management should plaintiff self mutilate and require such service. [Defendant's Aff. at p. 4]. Defendant KARNEY states that, due to staffing shortages at the time, Dr. Orr was not immediately replaceable and could not be assigned to duties that would ensure he would not come into direct contact with plaintiff. [Defendant's Aff. at p. 4].

Plaintiff inaccurately argues his earlier case was not pending on appeal at that time, but review of Court records for cause no. 2:02-CV-0202 reveals plaintiff had signed a notice of

9

appeal February 1st and it was file-stamped by the Clerk on February 2, 2005. It appears that, for purposes of his argument, plaintiff may have confused the filing of his notice of appeal with the filing of his appellate brief. Plaintiff's appeal in 2:02-CV-0202 was pending on February 3rd and continued until the Fifth Circuit affirmed the dismissal for frivolousness and failure to state a claim on July 6, 2006.

Defendant further avers he was informed by Clements Unit staff that "plaintiff could not be safely housed in the Clements Unit because of the likelihood of real or alleged retaliation against him by multiple staff because of his past conflicts and behavior." [Defendant's Aff. at p. 5].

Plaintiff contends defendant KARNEY offers hearsay evidence by way of his affidavit and argues he has a right to confront the person or persons who gave this information to KARNEY. This objection is not a basis for excluding KARNEY's affidavit account of these statements because it is not submitted to show the statements are true, but to show what was presented to him and considered in deciding to facilitate plaintiff's transfer. *See Snyder v. Whittaker Corp.*, 839 F.2d 1083, 1090 (5th Cir. 1988)("[A] statement does not fall under the hearsay rule if it was offered, not to prove the truth of the matter asserted ... but to prove that the statement was made.").

Defendant avers that, because the same clinical and security staff earlier sued by plaintiff was also involved in the Step Down Program and Crisis Management, it was necessary to remove plaintiff entirely from the Clements Unit [Defendant's App. at p.5]. Defendant states he "considered the circumstances and reaffirmed [his] understanding of TDCJ Classification Plan Policy C-1, III.B.8 that [he] had used several times before to transfer patients under the "enemy

on the unit' and/or "severe medical illness" provisions of that same policy." [Defendant's Aff. at p. 5].

Defendant KARNEY states he concluded that, "in light of Plaintiff's litigious history with Dr. Orr and other staff who would treat and care for plaintiff [in the Step Down Program], it would be impossible for plaintiff to form the necessary therapeutic relationship . . .. because of the animosity between plaintiff" and staff. [Defendant's Aff. at p. 6]. He avers he recommended a transfer of plaintiff from the Step Down Program through a Progress Note in plaintiff's Outpatient Clinical Record "documenting that the required coordination between TDCJ Security Staff and TTUHSC Clinical Staff had been accomplished." He states the notation "cleared the way for Clements Unit Security/Classification to submit a request to the State Classification Committee to have the plaintiff returned to his home unit." [Defendant's Aff. at p. 6].

Defendant KARNEY states he also considered plaintiff's severe Axis II disorder (borderline personality disorder) and how his history of self-inflicted injuries causing significant blood loss could easily exceed the emergency medical resources of the Clements Unit, requiring transportation to appropriate offsite hospital facilities. [Defendant's Aff. at p. 6].

Defendant KARNEY avers his decision was not based on the lawsuit itself, but on the circumstances leading up to it and flowing from it. [Defendant's Aff. at p. 6-7].

Plaintiff presents an e-mail from defendant KARNEY [Plaintiff's Ex. I p. 41] stating:

> Please disregard e-mail 654402 noting the acceptance of patient Bishop, Troy to the Stepdown Program. His [sic] is inappropriate for Bill Clements 12 Building. There is a risk he will alledge [sic] retaliation by the Stepdown psychiatric and nursing staffs. This is a risk management issue.
> Thank you.
> D. Karney, M.D.
> Acting Clinical Director

Plaintiff argues defendant KARNEY acted for a non-medical reason, that of retaliation for plaintiff's having filed suit against Dr. Orr and other medical staff, as well as some security staff.

Plaintiff's showing of a connection between his discharge from Step Down and his earlier civil rights lawsuit against the medical and security personnel who worked in the PAMIO, Crisis Management, and Step Down programs is not sufficient to establish causation. Plaintiff's burden on this element is to show that, but for the retaliatory motive the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

Defendant KARNEY's unrebutted affidavit evidence establishes a non-retaliatory basis for plaintiff's discharge or transfer, that is, the determination that a therapeutic relationship was impossible between plaintiff and the mental health caregivers who worked in PAMIO, Crisis Management, and Step Down and his belief, based upon information from Clements Unit personnel that plaintiff would not be safe on the unit and would accuse the mental health caregivers of retaliation. Further, the e-mail presented by plaintiff shows no intent to punish plaintiff for his earlier suit or to chill litigation of non-frivolous claims, but a determination that plaintiff is not suitable for the Clements Unit 12 Building, which is devoted to PAMIO, Crisis Management, and Step Down, because he will likely experience or at least allege retaliation.

The Fifth Circuit has recognized "[i]t is simply not irrational to consider general litigiousness, or the filing . . . of frivolous law suits, or concentration on being a "jail house lawyer," or the like, as anti-social activity which may to some extent interfere with and adversely reflect on a prisoner's rehabilitation." *Johnson v. Rodriguez* at 316. It is also not irrational to

conclude such things may to some extent adversely affect a prisoner's therapeutic relationship with a psychologist he has already unsuccessfully sued, diminishing the likelihood of a productive therapeutic relationship devoid of rancor on both sides.

The bases averred to by defendant KARNEY are all reasonable, entitling him to qualified immunity, and non-retaliatory, entitling him to summary judgment on this claim.

Plaintiff argues that defendant KARNEY's reference to the TDCJ Classification Plan Policy C-1, III.B.8 [defendant's App. p. 9-10] is erroneous because that section applies only to Transfer Facilities, facilities which house inmates undergoing reception and diagnostic processing or pending assignment to a permanent facility. Even if plaintiff is correct, this only shows defendant KARNEY erred in his application of prison policy, not that his actions were animated by retaliatory motive against plaintiff. At most, this would support a claim of negligence against defendant KARNEY; however, section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care. *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990); *Daniels v. Williams*, 474 U.S. 327, 331-34, 106 S.Ct. 662, 664-67, 88 L.Ed.2d 662 (1986)(inmate slipped on pillow left on stairs); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)( negligent medical care will not support a claim under section 1983).

Plaintiff also claims that, by discharging him or facilitating his discharge, defendant KARNEY acted with deliberate indifference to plaintiff's serious medical needs because he was aware of plaintiff's self-mutilating behavior and that plaintiff had been admitted to Step Down in the hope that it would help him end such behavior.

Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). However, not every claim of inadequate or improper medical treatment is a violation of the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A disagreement with a doctor over the method and result of medical treatment require a finding of deliberate indifference. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). "[N]egligent medical care does not constitute a valid section 1983 claim." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Further, medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Plaintiff presents a section of his medical records and argues that, by his transfer, he was returned to the Wynne Unit where he had access to razors and continued his previous behavior of periodically cutting his arms. Plaintiff's medical records show plaintiff periodically self-mutilated at the Wynne Unit through July of 2005, necessitating transfers to Skyview in May, June, and July for additional psychiatric treatment [plaintiff's Exhibit J at 62-80]. Plaintiff contends that because the Step Down program does not allow razor blades, plaintiff suffered self-inflicted injuries which he would not have suffered in Step Down. Plaintiff's argument is based on an assumption that he would have benefitted from the program or, at least, would not have been able to self-mutilate with any other instrument. While there may be strict prohibitions on

razors in Step Down, plaintiff cannot show that, under the same stress he experienced after his transfer back to the Wynne Unit, *i.e.*, nightmares of past trauma and tragic news about a family member, he would not have found some other way to cut himself or even managed to obtain a razor. Plaintiff's speculation that he would not have mutilated himself is simply a claim that an alternative method of treatment from that available at Wynne or Skyview, and later Ramsey II, should have been utilized, but that does not elevate his claim to constitutional dimension. *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

Critically, it is clear plaintiff's removal from Step Down did not deprive him of mental health care. After removal from Step Down and his treatment at Wynne and Skyview, plaintiff was transferred to the McConnell Unit and then to the Ramsey II Unit[4], where he received one-on-one psychiatric care with a psychiatrist who has administered thorazine and cogentin[5]. While plaintiff was not satisfied with this treatment, his dissatisfaction does not support a claim under section 1983. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff's final claim is that he was treated differently from other prisoners in violation of his right to Equal Protection. To prove his claim under this theory, plaintiff must show that, because of his constitutionally protected litigation, he was treated unfairly compared to other prisoners who were otherwise similarly situated. Plaintiff's claim fails initially because, as earlier discussed in this analysis, the underlying lawsuit was frivolous.

By his Brief in Opposition, attached to his June 16, 2009 "Declaration in Opposition," plaintiff argues he was treated differently because of his earlier litigation against Dr. Orr and

---

[4]Plaintiff is presently back on the Clements Unit, in the Step Down program, with new mental health caregivers.

[5]April 9, 2009 hearing at 3:01:27 to 3:01:56.

because he is "politically active and a jailhouse lawyer, and other prisoner's in step down were not." Plaintiff has not presented any evidence that KARNEY knew plaintiff was "politically active" and a "jailhouse lawyer."

All that has been shown is that KARNEY knew of a single lawsuit, 2:02-CV-0202, against eighteen defendants consisting of Dr. Orr and other caregivers, as well as a few members of the security staff. Moreover, even if cause no. 2:02-CV-0202 were not frivolous and provided a sufficient basis to support plaintiff's claim, as noted earlier herein, the Fifth Circuit has recognized "[i]t is simply not irrational to consider general litigiousness, or the filing . . . of frivolous law suits, or concentration on being a "jail house lawyer," or the like, as anti-social activity which may to some extent interfere with and adversely reflect on a prisoner's rehabilitation." *Johnson v. Rodriguez* at 316. It is also not irrational to conclude such factors may affect the likelihood a prisoner will benefit from treatment by the psychologist he unsuccessfully sued. Critically, plaintiff has utterly failed to adduce evidence of other inmates who were similarly-situated but who were allowed to remain in the Step Down program. For all of these reasons, defendant has shown he is entitled to judgment as a matter of law with respect to this claim.

The Court notes mental health professionals such as Dr. KARNEY must be free to exercise judgment in deciding whether a specific treatment or program of treatment will be beneficial to the patient. KARNEY's affidavit shows plaintiff's earlier suit against Dr. Orr was an impediment to a therapeutic relationship with Dr. Orr, who could not be replaced at the time or assigned to duties which would not require hm to treat plaintiff in Step Down and Crisis Management. In addition, defendant KARNEY, as administrator of the Step Down program, was

charged with responding to security concerns about plaintiff's safety. In both respects, KARNEY's actions, even if based on erroneous judgment, were objectively reasonable, entitling him to qualified immunity. Lastly, plaintiff was afforded continued mental health care after his discharge from the program, though it was not the mental health care he wanted.

## CONCLUSION

For the reasons set forth above, it is clear that, drawing all reasonable inferences in favor of plaintiff, defendant KARNEY has shown there is no material issue of disputed fact which preclude entry of summary judgment in the instant cause and he is entitled to judgment as a matter of law.

The Court finds defendant KARNEY's motion for summary judgment should be and hereby is GRANTED. Federal Rule of Civil Procedure 56(c).

IT IS THEREFORE ORDERED that plaintiff's claims against defendant KARNEY are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

IT IS SO ORDERED.

ENTERED this _17th_ day of September, 2009.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE